IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03166-RMR-KLM

KAYLA RAINEY,
SARA WAKELY,
RAISA ALMADA,
LEIGH ANNE LAPP,
KATHLEEN LEIVIAN,
KATHERINE POWEL,
DEBORAH LASCHINGER,
DARLENE KREDER,
ANNE RIVARD,
BRIDGETTE MCGURN, and
ALEXANDRIA LASCHINGER,

      Plaintiffs,

v.

WESTMINTER PUBLIC SCHOOLS, and
KIRCHERS LEDAY, in his personal and official capacity as Chief of Staff, Human
Resources Department,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss the Complaint**

[#24] (the "Motion").  Plaintiffs filed a Response [#26] in opposition to the Motion [#24],

and Defendants filed a Reply [#27].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R.

Civ. P. 72(a), the Motion [#24] has been referred to the undersigned for a

recommendation regarding disposition.  *See* [#25].  The Court has reviewed the Motion,

the Response, the Reply, the entire case file, and the applicable law, and is sufficiently

advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#24] be **GRANTED in part and DENIED in part**.

## I. Background

Plaintiffs were employed by Defendant Westminster Public Schools ("WPS") for the 2021-2022 school year.  *Compl.* [#1] at 2.  In response to the COVID-19 pandemic, Defendant WPS implemented a vaccine requirement for employees, which required all teachers and staff to either receive a COVID-19 vaccine or obtain an exemption from Defendant WPS by October 15, 2021.   *Id.* at 2-3.  Plaintiffs' positions were included in this vaccine policy.  *Id.* at 2.  Plaintiffs aver that they hold sincerely held religious beliefs that prevent them from receiving a COVID-19 vaccine.  *Id.* at 3.  Plaintiffs assert that they informed Defendants of these beliefs and sought religious exemption from the vaccine mandate.  *Id.*  Plaintiffs concede that Defendant WPS initially granted their request for exemption from the requirement.  *Id.*  However, Plaintiffs assert that Defendant Kirchers Leday ("Defendant Leday"), Chief of Staff of the Human Resources Department at WPS, informed Plaintiffs that Defendant WPS was not making a determination as to the validity of Plaintiffs' religious beliefs but would nonetheless grant the exemption.  *Id.*

Plaintiffs and Defendant Leday along with other members of the Human Resources Department then entered into meetings to discuss the accommodations.  *Id.* at 3. Plaintiffs assert that they offered accommodations in these meetings such as mask wearing and regular temperature checks.  *Id.* at 4.  Additionally, Plaintiffs assert that Defendant WPS could have accommodated them by requiring them to take unpaid leave in the event that they needed to quarantine due to contracting COVID-19.  *Id.*  After these meetings, Defendant Leday communicated to Plaintiffs that Defendant WPS was unable

to provide any accommodations for Plaintiffs' request for religious exemption, as this would result in an undue hardship on the part of WPS. *Id.* at 3-4. Effective on October 18, 2021, Defendants placed Plaintiffs on indefinite unpaid leave. *Id.* at 4.

Plaintiffs assert that Defendants' decision to place them on indefinite unpaid leave was the equivalent of termination. *Id.* at 4. Additionally, Defendant Leday informed Plaintiffs that they were not to communicate with any WPS students or staff or be present on any WPS premises without the prior approval of the Chief of Staff, i.e. Defendant Leday. *Id.* at 5. Plaintiffs assert that they were informed that a refusal to comply with this directive could result in termination of employment. *Id.* The letter sent to Plaintiffs on October 7, 2021, stated as follows:

> During your leave, you are directed not to have contact with any Westminster Public Schools students or staff in person or through electronic communications, or be present on any Westminster Public Schools premises without the permission of the Chief of Staff. Failure to adhere to this directive will lead to disciplinary actions up to an[d] including termination of employment.

*Id.* at 5.

Plaintiffs assert that this "no-contact directive" applies to all WPS employees placed on unpaid leave and "is the official policy of the Defendant." *Id.* at 6. Plaintiffs aver that Defendant Leday is the final policymaker with respect to the handling of accommodation requests or exemptions from the vaccine mandate. *Id.* Further, Plaintiffs aver that Defendant Leday spoke for Defendant WPS when he directed Plaintiffs to have no contact with WPS staff or students. *Id.* Plaintiffs aver that their speech was chilled because of this no-contact policy. *Id.* at 6. Plaintiffs assert that this directive resulted in a prohibition on discussions with WPS staff on matters of public concern and caused Plaintiffs distress due to the threat of disciplinary action. *Id.*

As a result of these allegations, Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"). *Id.* at 5. Plaintiffs subsequently received right-to-sue letters and then brought this suit. *Id.* Plaintiffs aver that they had to seek employment elsewhere because of being put on indefinite unpaid leave and now earn less than their prior salaries at WPS. *See generally id.*

Plaintiffs first bring a claim pursuant to 42 U.S.C. § 1983 against Defendant WPS and Defendant Leday alleging violations of their First Amendment rights. *Id.* at 15. Plaintiffs aver that Defendant Leday violated clearly established law and is thus not entitled to qualified immunity. *Id.*

Second, Plaintiffs assert a violation of Title VII of the Civil Rights Act ("Title VII") against Defendant WPS. *Id.* at 15. Plaintiffs assert that they were qualified for their positions with Defendant WPS, performed their job duties satisfactorily, and were denied reasonable accommodations for their religious beliefs. *Id.* at 15-16. Plaintiffs aver that, by placing them on indefinite unpaid leave, Defendant WPS constructively discharged them, and that Defendant WPS could have reasonably accommodated them without undue hardship. *Id.* at 16.

Third, Plaintiffs assert a violation of the Colorado Anti-Discrimination Act ("CADA") against Defendant WPS. *Id.* at 17. Plaintiffs aver that Defendant WPS failed to reasonably accommodate their sincerely held religious beliefs by placing them on unpaid leave, which resulted in economic damages and emotional distress to Plaintiffs. *Id.* at 18. Plaintiffs request nominal and compensatory damages for emotional upset, stress, and

anxiety and economic damages for lost income, lost benefits, lost future wages, and out-of-pocket expenses.  *Id*. at 19.

## II.  Standard of Review

### A.     Fed. R. Civ. P 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding.  *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id*. at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed.  *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.*  (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.     Fed. R. Civ. P 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

### A.    Subject Matter Jurisdiction

Defendants aver that in order for the Court to exercise jurisdiction over Plaintiffs' claim, Plaintiffs must allege that they have suffered an injury-in-fact.  *Motion* [#24] at 6. Defendants aver that Plaintiffs have failed to do so, and therefore lack standing to bring their First Amendment claim.  *Id.*  Defendants thus make an argument pursuant to Fed. R. Civ. P. 12(b)(1) but also purport to move only pursuant to 12(b)(6).  While it is improper for Defendants to make a jurisdictional argument on a motion to dismiss for failure to state a claim, the Court must nevertheless address any jurisdictional arguments before addressing the merits of the case on a 12(b)(6) motion.  *Raccoon Recovery, LLC v. Navoi Mining & Metallurgical Kombinat*, 244 F. Supp. 2d 1130, 1136 (D. Colo. 2002).  Standing is a question of subject matter jurisdiction, and thus a basis for dismissal under Rule 12(b)(1).  *See Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1190 (D. Colo. 2021); *Irvine v.*

*I.C. Sys., Inc.*, 198 F. Supp. 3d 1232, 1235 (D. Colo. 2016) (citing *Colo. Envtl. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (standing is jurisdictional)).

A plaintiff has standing when (1) she has suffered an injury-in-fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). To establish an injury-in-fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* For an injury to be concrete, "it must actually exist." *Id.* "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* Thus, Plaintiffs must show, first and foremost, an invasion of a legally protected interest that is concrete and particularized and actual or imminent. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 64 (1997) (internal quotation marks omitted).

Defendants aver that to satisfy the injury-in-fact requirement, Plaintiffs must allege a chilling effect on the exercise of their First Amendment Rights arising from an objectively justified fear of real consequences. *Motion* [#24] at 6. Defendants aver that Plaintiffs failed to allege this, and failed to allege that their speech was actually chilled. *Id.* at 7. The Court disagrees. Plaintiffs allege that their speech was chilled and "the broad no-contact order prevents Plaintiffs from speaking with friends and family who are District staff members." *Compl.* [#1] at 6. Further, Plaintiffs assert that the topics they refrained from speaking on were "topics of public concern," and that the no-contact directive came with a "threat of disciplinary action." *Id.* Plaintiffs were instructed: "Failure to adhere to this directive will lead to disciplinary actions up to an[d] including termination of

employment." *Id.* at 5.  For purposes of standing, Plaintiffs have sufficiently alleged a concrete and particularized injury (the chilling of their alleged protected speech) with a justified fear of real consequences (disciplinary action including termination).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.  Accordingly, the Court **recommends** that the Motion [#24] be **denied** to the extent that it seeks dismissal on the basis of lack of subject matter jurisdiction.

**B.    Failure to State a Claim**

   **1.    First Amendment**

Plaintiffs assert a § 1983 claim for violation of their constitutional rights.  *Compl.* [#1] at 15.  Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 1161 n.9 (1979); *see also Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (explaining "[t]here can be no 'violation' of § 1983" because the statute "is a remedial vehicle").  Accordingly, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983).  Here, Plaintiffs allege a prior restraint claim, asserting a violation of their First Amendment rights against both Defendant WPS and Defendant Leday.  *Compl.* [#1] at 14-15. !

In the present Motion [#24], Defendants seek dismissal of Plaintiffs' municipal liability claim pursuant to § 1983. *Motion* [#24] at 5. Defendants aver that a school district cannot be held liable under § 1983 for an employee's action under a theory of respondeat superior, and instead, municipal liability is limited to actions which are officially sanctioned or ordered. *Id.* Defendants aver that Plaintiffs' claim fails for three reasons: (1) Plaintiffs failed to plausibly allege a constitutional violation of their right to free speech; (2) Plaintiffs failed to plead facts that establish that Defendant WPS had an official policy or custom of restraining speech of employees; and (3) Plaintiffs failed to plausibly allege that Defendant Leday was a final policymaker, and thus directives issued by him do not constitute a formal policy on behalf of WPS. *Id.* at 6, 8,10.

In response, Plaintiffs assert that informal procedures undertaken by officials which are designed to chill expression can constitute a prior restraint, and thus they have sufficiently stated a First Amendment violation pursuant to § 1983. *Response* [#26] at 8. Further, Plaintiffs aver that the no-contact directive was impermissible, as it potentially stifled speech of public concern and it resulted in Plaintiffs having a justified fear of disciplinary consequences for failure to adhere. *Id.* at 10. Plaintiffs aver that the directive by Defendant Leday was written in formal correspondence, placed in Plaintiffs' personnel files, and "covered any communications, on any topic, without limitations, with any District student or staff." *Id.* Thus, Plaintiffs argue that the no-contact directive was impermissibly broad and therefore unconstitutional. *Id.* Additionally, Plaintiffs argue that they have sufficiently pled that Defendant Leday spoke for Defendant WPS when issuing the directive, and that the directive was the official policy of Defendant WPS. *Id.* at 11.

### i.    Defendant WPS

Plaintiffs assert both an official capacity claim against Defendant Leday and a claim against a governmental entity, Defendant WPS, pursuant to § 1983. *Compl.* [#1] at 1, 14. However, the Supreme Court has clearly established that:

> Official capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the governmental entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (*quoting Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658 (1978)); *see also Doe v. Douglas Cnty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991) (dismissing an official capacity suit against a school psychologist as redundant to the claim against the school district). Here, the real party in interest is the entity, Defendant WPS, and therefore the official capacity suit against Defendant Leday is redundant. The Court therefore **recommends** that the Motion [#24] be **granted** as to the official capacity claim against Defendant Leday and **dismissed with prejudice**. *See, e.g., Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (dismissal with prejudice is appropriate where a complaint fails to state a claim and granting leave to amend would be futile).

While it is true that school districts are liable only if the violation of Plaintiffs' federal rights results from an action taken under an official custom or policy, see *Monell,* 436 U.S. at 658, Plaintiffs must first allege that Defendant WPS violated their constitutional rights. *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983). The Court thus first examines the alleged First Amendment violation that arose from the no-contact directive issued by Defendant WPS. The First Amendment relates to freedom of speech, religion, and association, providing that "Congress shall make no law respecting an establishment of

religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  For governmental action to trigger First Amendment scrutiny, it must carry consequences that infringe protected speech.  *U.S. W., Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999) ("As a threshold requirement for the application of the First Amendment, the government action must abridge or restrict protected speech").  The Tenth Circuit recognizes two separate claims arising from First Amendment speech violations: (1) retaliation for engaging in protected speech, which is not at issue in the present lawsuit; and (2) unlawful prior restraint prohibiting a citizen from making protected speech.  *Berger v. City & Cnty. of Denver*, No. 18-cv-01836-KLM, 2019 WL 2450955, at *4 (D. Colo. June 11, 2019).

A prior restraint on speech is conduct that restricts, or "chills," speech because of its content before the speech is communicated.  *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1308 (10th Cir. 2009).  While prior restraints are not unconstitutional per se, any system of prior restraint faces "a heavy presumption against its constitutional validity."  *SE Promotions*, 420 U.S. at 558.  A prior restraint claim arises where such conduct is intended to "chill" protected speech and the chilling effect is based on "an objectively justified fear of real consequences*." Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010).  Courts have found that more informal conduct can also rise to the level of a prior restraint, such as where an employer directs an employee not to speak on a certain subject matter.  *Dirks v. Bd. of Cnty. Comm'rs of Ford Cnty.*, No. 15-CV-7997-JAR, 2016 WL 2989240, at *5 (D. Kan. May 24, 2016) (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67-68 (1963)).  "Reduced to their lowest common denominator,

true or classic prior restraints give public officials the power to deny use of a forum in advance of actual expression." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). "The threshold inquiry in analyzing the constitutionality of a governmental restriction on employee speech is whether the particular speech at issue was on a matter of public concern." *Arndt v. Koby*, 309 F.3d 1247, 1252 (10th Cir. 2002). Such an inquiry presents a question of law for the court to determine. *Id.*

"A matter is of public concern . . . if it is of interest to the community, whether for social, political, or other reasons. By contrast, speech of purely personal interest, or involving internal personnel disputes, is not of public concern." *Arndt*, 309 F.3d at 1252 (internal citations and quotation marks omitted). In determining whether employee speech addresses matters of public concern, the Court examines "the content, form and context of a given statement, as revealed by the whole record," bearing in mind that the Court's object is to distinguish between "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Berger*, 2019 WL 2450955, at *4. The Tenth Circuit has held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996), disputes over the term of employment, *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1233-34 (10th Cir. 1998), and workplace frustration, *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989). A discussion is not of "public concern" merely because "its subject matter could in certain circumstances, be the topic of a communication to the public that might be of general interest." *Wilson v. City of Littleton*, *Colo.*, 732 F.2d 765, 769 (10th Cir. 1984) (internal quotation omitted).

The Court finds that Plaintiffs have failed to sufficiently allege that the restriction on their speech by Defendant WPS involved a matter of public concern.  It is not enough to make conclusory statements that, "Plaintiffs refrained from speaking with friends who are District staff members about any topic, including topics of public concern," without further indication as to what those topics were.   *Compl.* [#1] at 6; *see Initiative & Referendum Inst. v. Walker*, 450 F. 3d 1089 (10th Cir. 2006) (stating that plaintiffs must do more than make a bare assertion that, as a result of government action, one is discouraged from speaking).  Although it is conceivable that the no-contact directive *could* lead to Plaintiffs' speech being stifled regarding public concerns, Plaintiffs offer no factual allegations to suggest that in this instance, the directive *did* so.  *See Sells v. Upper Pine River Fire Prot. Dist.*, No. 18-cv-02194-CMA-KLM, 2021 WL 1172680, at *3 (D. Colo. Mar. 29, 2021) ("What is actually said on that topic must itself be of public concern.  Although it is conceivable that an agenda item labelled 'lack of training' *could* lead to discussion about public safety, plaintiff offers no evidence to suggest that it *did* in this case."); *see also Initiative & Referendum*, 450 F.3d at 1089 (stating that if all it took to summon the jurisdiction of the federal courts were a bare assertion that, as a result of government action, one is discouraged from speaking, there would be little left of the Article III threshold in First Amendment cases).  While Plaintiffs may have sufficiently alleged an injury for purposes of standing, they have not provided enough details regarding such an injury in order to state a cognizable claim pursuant to the First Amendment.

Plaintiffs rely primarily on *Brammer-Hoelter* in arguing that the no-contact directive issued by Defendant WPS was broad enough to encompass speech of public concern. *Response* [#26] at 8-9.  Plaintiffs cite *Brammer-Hoelter* for the proposition that a directive

by a school to teachers not to speak to anyone about school matters was sufficiently broad to potentially stifle speech of public concern. *Id.* [#26] at 9. Plaintiffs aver that, like the directive in *Brammer-Hoelter*, the no-contact directive issued by Defendant WPS was broad enough that Plaintiffs have "refrained from speaking with friends who are District staff members about any topic, including topics of public concern." *Id.* at 10. The Court finds that *Brammer-Hoelter* is distinguishable from this case. In *Brammer-Hoelter*, the plaintiffs, who were schoolteachers, developed concerns as to the "operation, management, and mission" of the school where they were employed and began to meet off-campus to discuss such grievances. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1199 (10th Cir. 2007). A school official, in turn, issued directives indicating that the plaintiffs were not to discuss school matters outside of work with "any person." *Id.* The *Brammer-Hoelter* plaintiffs alleged having twenty to twenty-five meetings, despite this directive, discussing their concerns about the school. *Id.* The Tenth Circuit found that many topics, such as complaining about staffing, salaries, and resignations, were not matters of public concern. *Id.* at 1206. The court further concluded that discussions among the teachers about whether the school's code of conduct could legally limit the plaintiffs' freedom of speech and whether that was a First Amendment violation were clearly matters of public concern, as "speech concerning potential illegal conduct by government officials is inherently a matter of public concern." *Id.* Thus, the plaintiffs in *Brammer-Hoelter* made specific, detailed factual allegations that their speech regarding illegal conduct by governmental officials was chilled. Here, Plaintiffs merely alleged that the no-contact directive encompassed speech of public concern without providing any details as to this speech.

Therefore, the Court cannot find that the no-contact directive chilled speech *of public concern*.  Because whether the speech is of public concern is a threshold issue, the Court need not determine whether Plaintiffs' speech was actually chilled by an objectively justified fear of real consequences.  *See Carpenter v. Sch. Dist. No. 1, City & Cnty. of Denver, Colo.*, No. 16-cv-01706-RBJ, 2017 WL 1407041, at *7 (D. Colo. Apr. 20, 2017).  Accordingly, the Court **recommends** that the Motion [#24] be **granted** as to the First Amendment claim against Defendant WPS and that the claim **be dismissed without prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

ii.     **Defendant Leday in his Individual Capacity**

Plaintiffs next assert a claim against Defendant Leday in his individual capacity. *Compl*. [#1] at 1.  As stated above, to recover under § 1983, a plaintiff must establish "the violation of a right secured by the Constitution and laws of the United States. . . ." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010).  Thus, Plaintiffs must adequately allege that Defendant Leday violated their First Amendment Rights.  As stated above, Plaintiffs have failed to allege that their restricted speech was speech of public concern.  As this is a threshold issue, Plaintiffs have failed to state a claim against Defendant Leday in his individual capacity. Accordingly, the Court **recommends** that the Motion [#24] be **granted** as to the First Amendment claim against Defendant Leday in his individual capacity and that the claim be **dismissed without prejudice**.

2.     **Title VII**

Plaintiffs next assert a Title VII violation against Defendant WPS only.  *Compl.*  [#1] at 15.  Title VII requires that "an employer, short of 'undue hardship,' make 'reasonable accommodations' to the religious needs of its employees."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66, (1977).  Before bringing a failure to accommodate claim, Plaintiffs must exhaust their administrative remedies because Section 706 of Title VII requires individual claimants to file a charge of employment discrimination with the EEOC.  *See* 42 U.S.C. § 2000e–5(e)(1); *see also Equal Emp. Opportunity Comm'n v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1326-27 (D. Colo. 2015).  Plaintiffs allege that they filed charges of discrimination with both the EEOC and the CCRD and received right-to-sue letters.  *Compl.* [#1] at 5.  Plaintiffs subsequently brought this suit within ninety days of receipt of the right to sue letters.  *Id.*

For a claim of religious discrimination based on a failure to accommodate theory, Plaintiffs must allege that: (1) they had a bona fide religious belief that conflicts with an employment requirement, (2) they informed their employer of this belief, and (3) they were fired for failure to comply with the conflicting employment requirement.  *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000).

While acknowledging that religion is a broad concept, courts further recognize that the substantive content of religious beliefs is distinctive:

> Religious beliefs include theistic beliefs as well as non-theistic moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views . . . . [R]eligion typically concerns ultimate ideas about life, purpose, and death . . . Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII.

EEOC Compliance Manual § 12–I(A)(1) (internal quotations and citations omitted); *see also Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) ("Thus, a

genuinely held belief that involves matters of the afterlife, spirituality, or the soul, among other possibilities, qualifies as religion under Title VII."); *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017) (holding that employee's objection to flu vaccine did not qualify as a religious belief protected by Title VII because his beliefs that "one should not harm their own body and . . . that the flu vaccine may do more harm than good" did not "address fundamental and ultimate questions having to do with deep and imponderable matters" and were not "comprehensive in nature").

Here, neither party has offered argument regarding whether Plaintiffs' beliefs regarding the COVID-19 vaccination constitute religious beliefs under Title VII. Thus, for the purpose of considering Defendant WPS's Motion [#24], the Court assumes that this threshold requirement has been met. Plaintiffs also allege, and Defendant WPS does not deny, that Plaintiffs informed Defendant WPS of this belief, and therefore the second element of the failure to accommodate test has been adequately alleged. *Compl.* [#1] at 3. However, the failure to accommodate test also requires that the employee was fired or constructively discharged. *See Thomas*, 225 F.3d at 1155. Plaintiffs contend that being placed on indefinite unpaid leave is the equivalent of constructive discharge, however, Defendant WPS argues that there is a distinction. *Compl.* [#1] at 4; *Motion* [#24] at 12. Defendant WPS further asserts that Plaintiffs have failed to adequately allege that they were constructively discharged "because their subjective frustrations over the District's handling of their religious accommodations is not enough to create a colorable constructive discharge claim." *Reply* [#27] at 8. Defendant WPS avers that Plaintiffs were "neither fired, failed to be rehired, or disciplined for failing to comply with the District's vaccination mandate." *Motion* [#24] at 12.

Constructive discharge occurs when an employer's actions make working conditions "so difficult" or "intolerable" that the employee "ha[s] no other choice but to quit." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017).   If an employee resigns of her "own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged." *Id.* (quoting *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)); *see also Fischer v. Forestwood Co.*, 525 F. 3d 972, 980 (10th Cir. 2008) (holding that the plaintiffs' voluntary resignations precluded any finding that their separation from employment constituted an adverse action).   By comparison, "[a] resignation will be involuntary and coerced when the totality of the circumstances indicate [that] the employee did not have the opportunity to make a free choice." *Yearous v. Niobrara Cnty. Mem'l Hosp. By & Through Bd. of Trustees*, 128 F.3d 1351, 1356 (10th Cir. 1997).  "Essentially, a plaintiff must show that she had '*no other choice* but to quit.'"  *Id.* (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992)) (emphasis in original).

The United States Supreme Court has held that being placed on unpaid leave is distinct from termination because unpaid leave "has no direct effect upon either employment opportunities or job status." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 71 (1986).  The Tenth Circuit has specifically found that unpaid leave is not an adverse employment action for purposes of Title VII.  *See Christmon v. B&B Airparts, Inc.*, 735 F. App'x 510, 514 (10th Cir. 2018) (quoting *Pinsker v. Joint Dist. No. 28J*, 735 F.2d 388, 391 (10th Cir. 1984)) ("[U]npaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe [religious

practices] and requires him only to give up compensation for a day that he did not in fact work.")

Plaintiffs must show that, at the time of their resignation, Defendant WPS did not allow them the opportunity to make a free choice regarding their employment relationship. *Yearous,* 128 F.3d at 1357. The Tenth Circuit has previously held that even requiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary. *See Lighton v. Univ. of Utah*, 209 F.3d 1213, 1223 (10th Cir. 2000); *Parker v. Bd. of Regents of Tulsa Junior Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992). The Court determines the voluntariness of an employee's resignation under an objective standard, looking to whether her working conditions were so intolerable that a reasonable employee would have had no other choice but to quit. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135-36 (10th Cir. 2004)

Defendant WPS avers that Plaintiffs were "neither fired, failed to be rehired, or disciplined for failing to comply with the District's vaccination mandate." *Motion* [#24] at 12. It further asserts that Plaintiffs have failed to sufficiently allege constructive discharge, and, therefore, their failure to accommodate claim fails. *Id. at 13.* The Court agrees. Plaintiffs have failed to allege that they were fired, and unpaid leave is distinct from termination with respect to Title VII claims. *See, e.g.*, *Ansonia,* 479 U.S. at 71. Additionally, Plaintiffs have not sufficiently alleged that their working conditions were "intolerable," such that they had no other choice but to quit, and, on the contrary, a number of Plaintiffs resumed their positions after Defendant WPS ended their unpaid leave. *Compl.* [#1] at 12-13. For example, Plaintiff Kreder resumed her position with Defendant

WPS as a special education teacher after the 2021-2022 school year, *id.* at 12, and Plaintiff McGurn resumed her position as a Level 2 teacher with Defendant WPS for the 2022-2023 school year.  *Id.* at 13.  Plaintiff Lapp contends that the "District failed to offer [her] a satisfactory position for the 2022-2023 school year."  *Id.* at 9.  Plaintiff Lapp avers that this "required" her to resign from Defendant WPS because the District "informed [her] that she could be forced to split working between multiple schools, and that the District would have to place Plaintiff Lapp in a position that opened up at the last moment or into [a] position created by the District for Plaintiff Lapp."  *Id.*  This evidences the fact that Defendant WPS both offered Plaintiffs the option to resume their positions, and further, was willing to even create a new position specifically for Plaintiff Lapp after her unpaid leave was ended.  These factual allegations do not support the notion that Defendant WPS made Plaintiffs' working conditions intolerable or gave them no other choice but to quit; rather, they suggest that Plaintiffs chose not to return to their positions of their own free will.

Plaintiffs make no other factual allegations that their resignations were coerced or that they did not make a free choice in choosing to pursue other employment opportunities.  Plaintiffs found other employment on their own accord, and an employee will not be held to have been constructively discharged in such a circumstance, even as a result of Defendant WPS's actions.  *See Hiatt*, 858 F.3d at 1318.  As stated above, even a choice between resignation and termination does not necessarily amount to constructive discharge unless Plaintiffs can adequately allege that such a choice was involuntary by an objective standard.  *Lighton,* 209 F.3d at 1222.  Plaintiffs aver that the indefinite unpaid leave "was for all practical purposes the equivalent of termination," but

the Court is to determine this based on an objective standard, not on Plaintiffs' subjective feelings regarding their employment circumstances.  *See id.*  Nothing in the Complaint [#1] points the Court to the conclusion that Plaintiffs lacked the opportunity to make a free choice in pursuing other employment opportunities when they were placed on unpaid leave.

Plaintiffs have therefore failed to sufficiently allege the third element of a failure to accommodate claim, that they were fired (or constructively discharged) for failure to comply with the vaccine requirement.  Accordingly, the Court **recommends** that the Motion [#24] be **granted** as to the Title VII claim against Defendant WPS and that the claim be **dismissed with prejudice**.  See *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (dismissal with prejudice is appropriate where amendment would be futile.)

## C.    Supplemental Jurisdiction

Lastly, Plaintiffs assert a religious discrimination claim pursuant to the CADA against Defendant WPS only.  *Compl.* [#1] at 17.  With dismissal of the federal claims, the Court must determine whether it has supplemental jurisdiction over the state law claim, as provided in 28 U.S.C. § 1367.  *Blagg v. Tech. Grp., Inc.*, 303 F. Supp. 2d 1181, 1187 (D. Colo. 2004).  While courts may exercise supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if the Court has dismissed all claims over which it has original jurisdiction.  *Id.*  When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "absent compelling reasons to the contrary."  *McDonald v. Sch. Dist. No. 1 in the Cnty. of*

*Denver & Colorado*, 83 F. Supp. 3d 1134, 1153 (D. Colo. 2015); *see also United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (stating that when all federal claims have been dismissed prior to trial, the court generally should decline to exercise supplemental jurisdiction over pendant state claims).  Here, subject matter jurisdiction is based on federal question jurisdiction pursuant to the federal Constitution and Title VII.  Further, Plaintiffs do not plead any basis for diversity jurisdiction.  The Court thus finds it appropriate to decline jurisdiction over the state law claim in this case.[1]

Accordingly, the Court **recommends** that the Motion [#24] be **granted** and that the CADA claim against Defendant WPS be **dismissed without prejudice**.  See, e.g., *Lopez v. Colorado*, No. 19-cv-0684-WJM-MEH, 2020 WL 1074756, at *5 (D. Colo. Mar. 6, 2020) (dismissing state law claim without prejudice when supplemental jurisdiction is declined).

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#24] be **GRANTED in part and DENIED in part**.  Specifically, to the extent that the Court construes Defendants' Motion [#24] as a motion to dismiss for lack of subject matter jurisdiction, the Court **recommends** that the Motion [#24] be **denied**.  Further, the Court **recommends** that the Motion [#24] be **granted** as to the First Amendment claim against Defendants and that the claim be

---

[1]  While the Court recommends declining supplemental jurisdiction over this claim, the Court notes, however, that Title VII and CADA claims "rise and fall together," and courts typically examine such claims using the same analysis.  *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) ("CADA discrimination . . . claims are subject to the same legal standards as Title VII claims") (citing *Johnson v. Weld County*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010)); *see also Medina v. Safeway Inc.*, No. 20-cv-03726-NYW, 2022 WL 672488, at *6 (D. Colo. Mar. 7, 2022) (finding that the Title VII and CADA religious discrimination claims should be analyzed in tandem).

dismissed without prejudice.  Further, the Court **recommends** that the Motion [#24] be **granted** as to the Title VII claim against Defendant WPS and that the claim be **dismissed with prejudice**.  Lastly, the Court **recommends** that the Motion [#24] be **granted** as to the CADA claim against Defendant WPS and that the claim be **dismissed without prejudice**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: April 18, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge